IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RICHARD AUSMUS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:18-CV-1497-MAB |
| | ) |
| VIPIN SHAH and FAIYAZ AHMED, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on the motion for summary judgment on the issue of exhaustion filed by Defendant Vipin Shah (Doc. 48). For the reasons set forth below, the motion is denied.

### BACKGROUND

Plaintiff Richard Ausmus brought this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while incarcerated at Lawrence Correctional Center. The complaint alleges that in early August 2017, Plaintiff's cellmate was treated for infected wounds, which Plaintiff believed were caused by spider bites (Doc. 1, pp. 2, 3). The wounds were cultured and the results showed that Plaintiff's cellmate had Methicillin-Resistant Staphylococcus Aureus ("MRSA") (Doc. 1, p. 3). The results also noted that "patient requires contact isolation" (*Id.*). Dr. Vipin Shah was notified of the test results on August 5, 2017 (*Id.*). The cellmate was not isolated, however, and was instead

returned to the cell he shared with Plaintiff (*Id.*). According to Plaintiff, neither of them knew about the positive MRSA test (*Id.*).

A couple weeks later, on August 22, 2017, Plaintiff was treated for multiple wounds to his lower right leg, which he believed were caused by spider bites (Doc. 1, pp. 3). Dr. Faiyaz Ahmed cultured the wounds by using a scalpel to cut into Plaintiff's leg without any anesthesia (*Id.*). Plaintiff was sent to an outside hospital three days later for emergency treatment (*Id.*). Blood was drawn, another culture was taken, and he was given a different antibiotic (*Id.*). On August 30, 2017, Dr. Ahmed again cut into the wound with a scalpel and without using any anesthesia (Doc. 1, p. 3). A culture was once again sent to a lab (*Id.*). Dr. Ahmed took another culture on September 4th, this time without using a scalpel (*Id.*). The cultures were positive for MRSA (*Id.*). "Contact isolation" was written next to the test results (*Id.*). However, Plaintiff was not isolated and was instead sent back to his cell that he shared with another inmate (*Id.*)

Following a threshold review of the complaint pursuant to 28 U.S.C. § 1915A, Plaintiff was permitted to proceed on the following claims:

> **Count 1:** Eighth Amendment claim against Dr. Vipin Shah for knowingly exposing Plaintiff to a cellmate with a MRSA skin infection.
>
> **Count 2:** Eighth Amendment claim against Dr. Faiyaz Ahmed for using a scalpel to scrape and drain Plaintiff's leg wounds, without administering anything for the pain, on August 22, 2017 and September 4, 2017.

(Doc. 6). Warden Kevin Kink remained on the docket as a Defendant in his official capacity simply for the purpose of carrying out any injunctive relief that might be granted (Doc. 6).

On May 22, 2019, Dr. Shah filed a motion for summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies prior to filing suit (Doc. 48). Plaintiff filed a response on June 3, 2019 (Doc. 52). Dr. Shah did not file a reply brief. Because the parties' filings do not involve a genuine issue of material fact, no evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) was necessary.

## **LEGAL STANDARDS**

*Summary Judgment*

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *E.g., Tolan v. Cotton*, 572 U.S. 650, 656, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). *Accord Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014). No hearing is necessary when there is no disputed issue of fact.

*Exhaustion*

The Prison Litigation Reform Act provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011)). In order to properly exhaust their administrative remedies, a prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Exhaustion is an affirmative defense, which the defendants bear the burden of proving. *Pavey*, 663 F.3d at 903 (citations omitted).

As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. ILL. ADMIN. CODE, tit. 20, § 504.800, *et seq.* (2017). First, he had to file a grievance with his counselor within 60 days "after the discovery of the incident, occurrence, or problem that gave rise to the grievance." *Id.* at § 504.810(a). Then, if unsatisfied with the counselor's response, the grievance must be sent to the grievance officer, who submits a written report of their findings and recommendations to the warden within two months, "when reasonably feasible under the circumstances." *Id.* at § 504.830(e). The warden then provides the inmate with a written decision on the grievance. *Id.*

An inmate may also request that a grievance be handled as an emergency by forwarding the grievance directly to the warden. ILL. ADMIN. CODE, tit. 20, § 504.840. If the warden determines that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the [inmate]," then the grievance is processed on an

expedited basis. *Id.*

Regardless of whether the grievance was processed in the normal manner or as an emergency, if the inmate is unsatisfied with the warden's decision, he or she has thirty days from the date of the warden's decision to appeal to the Administrative Review Board ("ARB"). ILL. ADMIN. CODE, tit. 20, § 504.850(a). The ARB submits a written report of its findings and recommendations to the Director of the IDOC, who then makes a final determination of the grievance. *Id.* at § 504.850(d), (e).

## FACTUAL BACKGROUND

Dr. Shah submitted grievance records from the ARB, grievance records from Lawrence, and Plaintiff's cumulative counseling summary (Docs. 48-1, 48-2, 48-3). The undisputed evidence shows that Plaintiff submitted four regular grievances and four emergency grievances.

The four emergency grievances were dated August 22, 2017; August 24, 2017; August 29, 2017; August 30, 2017 (Doc. 49-1, pp. 31–40). The warden determined they were not emergencies and returned them to Plaintiff (*Id.*). Instead of resubmitting the grievances through the normal grievance process, Plaintiff appealed the grievances directly to the ARB (Doc. 1, p. 2). These grievances were returned to Plaintiff because he failed to provide responses from his counselor, the grievance officer, and the warden (Doc. 49-1, pp. 31–40).

The first regular grievance is dated August 22, 2017 (grievance #01-18-111) (Doc. 49-1, pp. 17–20). In this grievance, Plaintiff indicates that he woke up on August 19th with several spider bites on his leg. He was seen by a doctor that day, who cut into Plaintiff's

wounds with a scalpel without any anesthesia. He was not given any pain relief medication afterwards. Plaintiff states "this situation could have easily been avoided." He goes on to say his cellmate was bitten approximately two to three weeks prior, and a scalpel was used to cut into his wounds and drain them. Plaintiff complains that nobody ever came by to spray their cell for spiders.

Plaintiff's second grievance is dated September 2, 2017 (grievance #01-18-111). Plaintiff complained that he had filed multiple emergency grievances, all of which were deemed non-emergencies, much to his disbelief. He then went on to recount the events of August 22nd and the medical care he received each day thereafter, making sure to emphasize the pain he was experiencing and the fact that he was not given any pain medication. He also recounted that his cellmate had a number of wounds that were similar to his and treated in the same manner.

Plaintiff filed a third grievance dated September 3, 2017 (grievance #01-18-111) (Doc. 49-1, pp. 17–18, 27–28). Plaintiff began by describing his wounds and the medical treatment he had endured. He indicated that he is supposed to have the wound cleaned and bandaged every day. He complained that did not happen on September 1st because the facility was on lockdown, and it did not happen again on September 3rd.

Plaintiff filed a fourth grievance dated September 8, 2017 (grievance #01-18-111) (Doc. 49-1, pp. 17–18, 29–30). In this grievance, Plaintiff complained that his wounds were not cleaned and bandaged the previous day.

Plaintiff's counselor did not respond to his four grievances until January 12, 2018 (Doc. 49-1, pp. 19, 21, 27, 29). By that time, medical personnel were well aware that

Plaintiff and his cellmate did not have spider bites, but instead had MRSA (*see* Doc. 49-4, pp. 34–35, 44, 45, 122, 130, 191–95).[1] Medical personnel should have also known that Plaintiff likely contracted the infection from his cellmate, who was diagnosed with MRSA several weeks before Plaintiff was first seen by healthcare for his own MRSA wounds.[2] Even though the counselor consulted with medical personnel in order to respond to Plaintiff's grievances, the counselor never mentioned MRSA and the counselor simply addressed Plaintiff's complaints that he didn't receive proper medical treatment for spider bites and that the prison did not spray for spiders. (*see* Doc. 49-1, pp. 19, 21, 27, 29). The counselor's response to the first grievance, as well as the responses to the third and fourth grievances, simply state that Plaintiff was "seen and treated by licensed Illinois physician within community standards of care" (*Id.* at pp. 19, 27, 29). The response to the second grievance states, "Medical issue was responded to in a separate grievance. Per

---

[1] MRSA causes skin infections that "generally start as swollen, painful red bumps that might resemble pimples or spider bites." MAYO CLINIC, *MRSA Infection*, https://www.mayoclinic.org/diseases-conditions/mrsa/symptoms-causes/syc-20375336 (last visited March 4, 2020). "MRSA skin infections can have a fairly typical appearance and can be confused with a spider bite. However, unless you actually see the spider, the irritation is likely not a spider bite." CENTERS FOR DISEASE CONTROL AND PREVENTION, *Methicillin-resistant Staphylococcus aureas (MRSA)*, https://www.cdc.gov/mrsa/community/index.html (last visited March 4, 2020). The Court further notes that the form used by the nurse on August 22, 2017 when Plaintiff reported to sick call directs the nursing staff to treat "[a]ll reported 'spider bites' . . . as MRSA" (Doc. 49-4, p. 117).

[2] MRSA usually spreads through skin-to-skin contact with an infected wound or contact with things that have touched an infected wound and are carrying the bacteria, such as personal items like towels and razors. CENTERS FOR DISEASE CONTROL AND PREVENTION, *Methicillin-resistant Staphylococcus aureas (MRSA)*, https://www.cdc.gov/mrsa/community/index.html (last visited March 4, 2020). It is well known that MRSA easily spreads in places where people are in close contact and hygiene is less than ideal, such as prisons. *E.g.,* Peter Eisler and Morgan Fecto, *MRSA bacteria target crowded places with poor hygiene*, USA TODAY (Dec. 16, 2013), https://www.usatoday.com/story/news/nation/2013/12/16/mrsa-emerging-in-schools-prisons-athletic-facilities/4013153/.

Maintenance Chief Engineer Hawkins: the facility has an outside contractor come monthly to spray for bugs/spiders" (*Id.* at p. 21).

The grievance officer then reviewed the grievances on February 20, 2018 (Doc. 49-1, p. 18). Like the counselor, the grievance officer also consulted with medical personnel yet never mentioned MRSA in his response and instead framed Plaintiff's complaint as "he didn't receive proper medical treatment for spider bites and that maintenance should spray for bugs." The grievance officer repeated what the counselor said and added that Plaintiff had been called to the Healthcare Unit twenty times since the date of his first grievance on August 22, 2017. The grievance officer also added that he was "unable to substantiate [Plaintiff's] claims with the information provided." The grievance officer ultimately recommended denying the grievance, which the warden concurred with on February 22, 2018. Plaintiff appealed to the ARB, where his grievances were received on March 12, 2018 (Doc. 49-1, p. 17). The ARB denied the grievances on April 20, 2018, finding that the issue was appropriately addressed by the facility administration.

Plaintiff asserts that, at the time he was filing his grievances, he did not know that he and his cellmate each had MRSA or that Dr. Shah was involved in his cellmate's medical care (Doc. 1, p. 3; Doc. 52). As best the Court can tell, this assertion has not been contested or contradicted. Plaintiff did not learn this information about MRSA or Dr. Shah's treatment of his cellmate until sometime later, after he and his cellmate both received and reviewed copies of their medical records (Doc. 1, p. 3).

**DISCUSSION**

Plaintiff's claim against Dr. Shah is that the doctor did not isolate Plaintiff's cellmate after he was diagnosed with a MRSA infection, thereby exposing Plaintiff to the MRSA bacteria. Dr. Shah argues that Plaintiff failed to exhaust his administrative remedies because none of the fully exhausted grievances name or otherwise identify him, and none of the grievances complain that Plaintiff contracted MRSA from exposure to his cellmate's infection (Doc. 49). According to Dr. Shah, Plaintiff's grievances about spider bites, spraying for poisonous spiders, and the treatment provided by Dr. Ahmed were insufficient to put the prison on notice of any issues concerning Dr. Shah. The Court, however, finds Defendant's argument unpersuasive.

Grievances are intended to give prison officials notice of a problem and a chance to correct it before they are subjected to a lawsuit; grievances are not intended to put an individual defendant on notice of a claim against him. *Jones v. Bock*, 549 U.S. 199, 219 (2007) ("We have identified the benefits of exhaustion to include allowing a prison to address complaints about the program it administers before being subjected to suit . . . . {E]arly notice to those who might later be sued . . . has not been through to be one of the leading purposes of the exhaustion requirement."); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013) ("The exhaustion requirement's primary purpose is to alert the state to the problem and invite corrective action.") (internal quotation marks and alterations omitted; citation omitted); *Johnson v. Johnson,* 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation.")

Although the Illinois Administrative Code mandates that grievances include the name, or at least a description, of the persons involved in the complaint, ILL. ADMIN. CODE, tit. 20 § 504.810(c), three of the four grievance forms Plaintiff used asked only for a "Brief Summary of Grievance" (pp. 21, 23, 25, 27, 29). There was no indication on the forms that names had to be provided (*see id.*). In this circumstance, the Seventh Circuit has held that the omission of names or identifying information does not mean that the prisoner failed to exhaust his administrative remedies so long as the grievances still gave prison administrators a fair opportunity to address the prisoner's complaints. *Maddox v. Love*, 655 F.3d 709, 721–22 (7th Cir. 2011). *Accord Jackson v. Shepherd*, 552 Fed. Appx. 591, 593 n.1 (7th Cir. 2014); *Conley v. Anglin*, 513 Fed. Appx. 598, 601 (7th Cir. 2013).

Furthermore, Plaintiff did not have the information necessary at the time he was filing his grievances to name Dr. Shah or include specific complaints about Dr. Shah's response to his cellmate's MRSA diagnosis. Plaintiff erroneously believed that his and his cellmate's wounds were spider bites and that prison officials should have responded by spraying for spiders. He contends that he was not privy to the information in his or his cellmate's medical records regarding their MRSA diagnoses or the medical personnel who had been directly involved in the diagnosis and treatment of their wounds. Defendant never acknowledged this assertion, much less contested it with any argument or evidence to show that Plaintiff did, in fact, know the actual nature and origin of his infection at the time he filed his grievances. Defendants also did not cite to any case law indicating that a prisoner's failure to include information or names in a grievance that

were *unknown to him at the time* could later be held against him and construed as a failure to exhaust his administrative remedies (*see* Doc. 49).

Simply put, Plaintiff did the best he could to grieve the situation as it unfolded based on what he knew *at the time*. He articulated the facts the prison could reasonably expect from a prisoner in his position. Plaintiff complained in his grievances about the wounds his cellmate had developed on his lip and leg. He complained that because prison officials did not take appropriate action in response to his cellmate's wounds, he developed the same kind of wounds on his leg a couple weeks later. Plaintiff also complained about the treatment he and his cellmate received for their wounds. With the benefit of hindsight, we now know that Plaintiff was off-base in believing that his wounds were attributable to spiders. However, the record also demonstrates prison officials knew, at the time, that the issue was MRSA, not spiders. And in light of that knowledge, Plaintiff's grievances were sufficient to notify prison administrators of a problem regarding the spread of MRSA so as to allow the prison to examine whether the healthcare providers had adequately responded to his cellmate's diagnoses. Under these circumstances, Plaintiff's failure to specifically name Dr. Shah or describe his objectionable actions had no effect on the process and did not limit the usefulness of the exhaustion requirement. *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011).

For these reasons, the Court cannot conclude that Plaintiff failed to exhaust his administrative remedies against Dr. Shah and Dr. Shah's motion for summary judgment must be denied.

## CONCLUSION

The motion for summary judgment on the issue of exhaustion filed by Defendant Vipin Shah (Doc. 48) is **DENIED.**

This matter will proceed on the following claims:

**Count 1:** Eighth Amendment claim against Dr. Vipin Shah for knowingly exposing Plaintiff to a cellmate with a MRSA skin infection.

**Count 2:** Eighth Amendment claim against Dr. Faiyaz Ahmed for using a scalpel to scrape and drain Plaintiff's leg wounds, without administering anything for the pain, on August 22, 2017 and September 4, 2017.

The stay on merits-based discovery (*see* Doc. 47) is **LIFTED**. A new schedule will be entered by separate order.

**IT IS SO ORDERED.**

**DATED: March 5, 2020**

<u>s/ Mark A. Beatty</u>
**MARK A. BEATTY**
**United States Magistrate Judge**